**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-55132-sms |
| | ) | CHAPTER 7 |
| MICHAEL SHANE YOUNG | ) | |
| (aka Michael S Young, aka Michael Young) | ) | |
| and JENNIFER LYNN YOUNG | ) | |
| (aka Jennifer L Young aka Jennifer Young) | ) | |
| | ) | JUDGE SAGE M SIGLER |
| DEBTORS. | ) | |

-------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| 2005 RESIDENTIAL TRUST 3-2 | ) | |
| | ) | |
| MOVANT, | ) | |
| | ) | CONTESTED MATTER |
| V. | ) | |
| | ) | |
| MICHAEL SHANE YOUNG and | ) | |
| JENNIFER LYNN YOUNG, | ) | |
| DEBTORS, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| MARY IDA TOWNSON, TRUSTEE, | ) | |
| RESPONDENTS. | ) | |
| _____ | ) | |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

**COMES NOW** 2005 RESIDENTIAL TRUST 3-2 ("Movant") a secured creditor

in the above-captioned case, by and through counsel, and moves this Court to enter an order

granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362 and

respectfully shows this Court as follows:

1.      On April 1, 2019, Debtors filed a petition with the Bankruptcy Court for the

Northern District of Georgia under Chapter 13 of Title 11 of the United States Bankruptcy

Code.

2.      On July 8, 2019, Debtors' Chapter 13 case was converted to a Chapter 7 of Title 11 of the United States Bankruptcy Code.

3.      Movant holds a Promissory Note secured by the Security Deed which describes real property owned by Debtors and known as: 108 Timberland Drive, Canton, GA 30114-5775 ("Property"). A copy of the Note, Security Deed, Allonge(s), and Assignment(s) of Mortgage, are attached hereto as Composite Exhibit "A" respectively.

4.      Debtors executed a Promissory Note secured by a Mortgage or Security Deed. The Promissory Note is either made payable to Movant or has been duly indorsed. Movant, directly or through an agent, has possession of the Promissory Note. Movant is the original mortgagee or the beneficiary or the assignee of the Mortgage or Security Deed.

5.      Based on the Debtors' schedules, the value of the Property is approximately $189,000.00.

6.      Upon information and belief, the approximate payoff, exclusive of legal fees and expenses incurred in the connection with the instant motion, due and owing to the Movant as of July 10, 2019 is approximately $50,588.20.

7.      Upon information and belief, per the Debtors' Schedules, Nationstar Mortgage LLC has a lien on the property in the amount of $104,000.00.

8.      Upon information and belief, per the Debtors' Schedules, Portfolio Recovery has a lien on the property in the amount of $2,000.00.

9.      Upon information and belief, per the Debtors' Schedules, the Debtors have claimed an exemption of $43,000.00 for the property.

10.     According to Debtors' Statement of Intention, Debtors intend to surrender the Property.

11.     The equity in the property when comparing the fair market value according to the Debtors' Schedule A/B ($200,000.00) versus the total indebtedness of the Debtors to Movant ($50,588.20) and additional liens to Nationstar Mortgage LLC and Portfolio Recovery (106,000.00) and exemption claimed by the Debtors ($43,000.00) is $411.80. Therefore, there is nominal equity in the Property for the benefit of the unsecured creditors of the estate.

12.     Debtors are in breach of the terms of the Note and Security Deed by failing to make the required payments due to Movant from April 25, 2011 to for the June 25, 2019 payments. Debtors are due ninety-nine (99) payments for a total of $26,863.02.

13.     Cause exists for relief from the automatic stay. Mortgage payments are not being made to the Movant. As such, Movant's interests are not adequately protected.

14      In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee.  Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed.  Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Security Deed.

**WHEREFORE**, Movant prays the Court as follows:

1.     Modify the Automatic Stay of 11 U.S.C. § 362(a) to permit Movant to enforce its security interest in the Property including but not limited to any non-bankruptcy remedies to foreclose and obtain possession;

2.    Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay;

3.    As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Collateral;

4.    Movant specifically requests permission to communicate with the Debtors and Debtors' counsel to the extent necessary to comply with applicable non-bankruptcy law; and

5.    Grant Movant such other and further relief as the Court deems just and proper.

This the 24th day of July, 2019.

Respectfully Submitted,
/s/ Mark A. Baker_____
Mark A. Baker (GBN # 033840)
*Counsel for Movant*
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Atlanta, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: mbaker@mtglaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-55132-sms |
| | ) | CHAPTER 7 |
| MICHAEL SHANE YOUNG | ) | |
| *(aka Michael S Young, aka Michael Young)* | ) | |
| and JENNIFER LYNN YOUNG | ) | |
| *(aka Jennifer L Young, aka Jennifer Young)* | ) | |
| | ) | JUDGE SAGE M. SIGLER |
| DEBTORS. | ) | |

-----------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| 2005 RESIDENTIAL TRUST 3-2, | ) | |
| | ) | |
| MOVANT, | ) | |
| | ) | CONTESTED MATTER |
| V. | ) | |
| | ) | |
| MICHAEL SHANE YOUNG AND | ) | |
| JENNIFER LYNN YOUNG, | ) | |
| DEBTORS, | ) | |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| NEIL C. GORDON, TRUSTEE, | ) | |
| RESPONDENTS. | ) | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that *2005 Residential Trust 3-2* has filed a ***Motion For Relief From Automatic Stay*** related papers with the Court seeking an order lifting the automatic stay to allow foreclosure.

     **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the ***Motion For Relief From Automatic Stay*** in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, GA 30303, at ***10:00AM*** on ***August 14, 2019.***

     Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must

attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, 75 Ted Turner Drive, S.W., Courtroom 1201, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: July 24, 2019

Respectfully Submitted,
/s/ Mark A. Baker_____
Mark A. Baker, (GBN # 033840)
*Counsel for Movant*
McMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Atlanta, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: mbaker@mtglaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER **7** |
| | ) | CASE NO. 19-55132-sms |
| MICHAEL SHANE YOUNG | ) | |
| *(aka Michael S Young, aka Michael Young)* | ) | |
| JENNIFER LYNN YOUNG | ) | |
| *(aka Jennifer L Young, aka Jennifer Young)* | ) | |
| | ) | |
| | ) | |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | |
| DEBTORS. | ) | |

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing NOTICE OF

MOTION, MOTION FOR RELIEF FROM STAY AND NOTICE OF ASSIGNMENT

OF HEARING was provided via Regular U.S. Mail and/or Electronic Mail (CM/ECF) to

the parties listed on the attached service list, this 24th day of July, 2019.

Via U.S. Mail
Michael Shane Young
108 Timberland Drive
Canton, GA 30114

Jennifer Lynn Young
108 Timberland Drive
Canton, GA 30114

<u>Via CM/ECF</u>
E. L. Clark
Clark & Washington, LLC
Bldg 3
3300 Northeast Expwy.
Atlanta, GA 30341


Neil C. Gordon
Arnall, Golden & Gregory, LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

U.S. Trustee
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

This 24th day of July, 2019.


**McMichael Taylor Gray, LLC**

/s/ Mark A. Baker_____
Mark A. Baker (GBN # 033840)
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Atlanta, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: mbaker@mtglaw.com
*Counsel for Movant*

# EXHIBIT A

Prepared by: ELLEN FERRER

**COUNTRYWIDE HOME LOANS, INC.**

DATE:       02/09/2005
BORROWER: JENNIFER L. YOUNG
CASE #:
LOAN #:
PROPERTY ADDRESS: 108 TIMBERLAND DR
                  CANTON, GA 30114-5775

1571 SAWGRASS CORP PKWY 4TH FL
SUNRISE, FL 33323
Phone: (800)360-2139
Br Fax No.: (866)590-2042

### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT

Date: 02/12/2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Security Deed; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

CONV
● HELOC - GA Agreement & Disclosure
2C473-GA (09/04)(d)

Page 1 of 9

Initials:

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee **FINANCE CHARGE**, as applicable, as described in paragraphs 7.D and 6.B(6), respectively. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date", any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.
(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.
(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.
(4) You may not use a Check to make a payment once the Draw Period ends. That is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 25,900.00          . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**5. ANNUAL PERCENTAGE RATE.**

[X] A. The initial Daily Periodic Rate is 0.01093 %. The initial **ANNUAL PERCENTAGE RATE** is 3.990 %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5C below had been used, in which event the initial Daily Periodic Rate would be 0.02397 % and the initial **ANNUAL PERCENTAGE RATE** would be 8.750 %. These discounted rates will be in effect from the date of this Agreement until 03/31/2005          . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

[ ] B. The initial Daily Periodic Rate is    N/A % and the initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. A billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

Initials 

D. The "Margin" to be used under paragraph 5.C above to determine my **ANNUAL PERCENTAGE RATE** is 3.500 percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**6. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGES.**

(1) Points **FINANCE CHARGE.**

I agree to pay a Points **FINANCE CHARGE** of $ 0.00          at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A          at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

Sub Escrow/Full Escrow                                      $ _____ 465.00
Attorney/Settlement Agent                                   $ _____ 150.00
_____                                       $ _____
_____                                       $ _____
_____                                       $ _____
_____                                       $ _____

(4) Miscellaneous **FINANCE CHARGES.**

I agree to pay the following miscellaneous **FINANCE CHARGES** at the time I sign this Agreement:

Flood Check Fee                                             $ _____ 26.00
_____                                       $ _____
_____                                       $ _____
_____                                       $ _____

 

(5) Annual Maintance Fee **FINANCE CHARGE**.

[X] I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 75.00    which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $ 20,000.00    of this Agreement through the first anniversary of this Agreement; from the date and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

(6) Low Balance Fee **FINANCE CHARGE**.

[ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee **FINANCE CHARGE** of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 7.D.

## 7. OTHER CHARGES.

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within ten (10) days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment.

(2) For each Equity Credit Line Check written for less than $250 which you honor, I agree to pay a Processing Fee of $5.

(3) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | | |
|---|---|---|
| Credit Report Fee | $ | 35.00 |
| GA Residentl Mtg Per Ln Fee FINANCE CHARGE | $ | 6.50 |
| GA Intangible Recording Tax | $ | 78.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| LESS Amounts Paid by Lender | $ | 0.00 |
| Total Paid by Borrower | $ | 760.50 |

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. [ ] I agree to pay an Account Termination Fee of $ 0.00    , to cover your costs of processing and administering my Account if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the fifth (5th)    anniversary of this Agreement.

[X] I will not be charged an Account Termination Fee on this loan.

(1)  I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)  I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Security Deed;

(3)  I sell, encumber or transfer title to the Real Property;

(4)  I fail to maintain insurance on the Real Property as required under this Agreement or the Security Deed;

(5)  I act or fail to act and as a result a lien senior to the lien of the Security Deed is filed against the Real Property;

(6)  I die and I am survived by another person obligated as a Borrower under this Agreement;

(7)  All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)  A prior lienholder on the Real Property begins foreclosure under its security document;

(9)  The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10)  I fail to pay taxes on the Real Property; or

(11)  My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a)  A judgment is filed against me;

    (b)  I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c)  I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d)  I move out of the Real Property.

    (e)  I sell, encumber or transfer title to the Real Property.

B.  If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1)  you may terminate any of my rights under my Account;

(2)  you may temporarily or permanently refuse to make any additional loans;

(3)  you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4)  you may foreclose the Security Deed;

(5)  you may reduce my Credit Limit; and

(6)  you may take any other action permitted by this Agreement, by law or in equity.

**13. MY IMPORTANT OBLIGATIONS.** I agree that:

A.  I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B.  I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C.  From time to time, if requested, I will supply you with current financial information about me.

D.  I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Security Deed.



**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Deed to Secure Debt (the "Security Deed") covering my dwelling located at

108 TIMBERLAND DR, CANTON, GA 30114-5775

(the "Real Property"). The Security Deed is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**9. SECTION INTENTIONALLY OMITTED.**

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Security Deed or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Security Deed such that the value of the lien of the Security Deed is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

(7) default under the Security Deed.

(8) The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Security Deed is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

Initials 

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Security Deed for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Security Deed such as:

    (1)  my promise not to exceed my Credit Limit; and

    (2)  my "Important Obligations" listed in the Security Deed.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. <u>Termination by Me</u>. I may terminate my right to obtain loans by paying off the entire indebtedness including accrued finance charges and by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. <u>Termination by You</u>. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. <u>Effect of Termination</u>. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 7.D above.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

    (1)  if the original Index is no longer available, you may change the Index and Margin;

    (2)  you may make any change I agree to in writing;

    (3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

    (4)  you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**17. OTHER PROVISIONS.**

A. <u>Third Parties</u>. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without

Initials: 

in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else.

**B. Additional Credit Reports and Appraisals.** I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Security Deed as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

**C. Tax Deductibility.** I know that I should consult a tax adviser regarding the deductibility of interest and charges.

**D. Applicable Law.** I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

**E. Application of Payments.** You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

**F. Failure to Perform.** If I violate or fail to perform any term or condition of this Agreement (or the Security Deed), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

**G. Complete Understanding of the Parties.** There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

**H. Waiver of Notice.** I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

**I. Meaning of Words.** All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

**J. Payment Marked "Payment in Full".** I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to** COUNTRYWIDE HOME LOANS, INC. P.O. Box 5170, Simi Valley, CA 93062-5170

**K. Enforcement.** You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

**L. Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.L and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at COUNTRYWIDE HOME LOANS, INC. P.O. Box 5170, Simi Valley, CA 93062-5170 or to such other address as you may designate by written notice to me as provided in this paragraph 17.L.

**M. Riders/Addenda.** The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum
☐ _____ Addendum
☒ Billing Rights Statement

☐ _____ Rider



BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

Borrower: JENNIFER L. YOUNG                                              Date

Borrower: MICHAEL S. YOUNG                                              Date

Borrower:                                                               Date

Borrower:                                                               Date

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY
David A. Spector
Managing Director

Prepared by: ELLEN FERRER

**COUNTRYWIDE HOME LOANS, INC.**

DATE:      02/09/2005
BORROWER: JENNIFER L. YOUNG
CASE #:
LOAN #:
PROPERTY ADDRESS: 108 TIMBERLAND DR
                  CANTON, GA 30114-5775

1571 SAWGRASS CORP PKWY 4TH FL
SUNRISE, FL 33323
Phone: (800) 340-2139
Br Fax No.: (866) 590-2042

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

**My Rights and Your Responsibilities
After You Receive My Written Notice**

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-XX (06/02)(d)

Initials:                    Initials: MSY



When recorded mail to:
*FIRST AMERICAN ELS, INC.*
*1228 EUCLID AVENUE, SUITE 400*
*CLEVELAND, OHIO 44115*
*ATTN: FT1120*

Filed in 3/1/2005 11:08:00 AM Office Clerk of Superior
Court Cherokee County, GA Deed BK 7735 Page 206 -
212, Intangible Tax $78.00 Patty Baker #1

Prepared By:
ELLEN FERRER

First American Equity Loan Services, Inc.
#___ -

[Space Above This Line For Recording Data]

(Escrow/Closing #)                    [Doc ID #]

## DEED TO SECURE DEBT

### (Securing Future Advances)

    THIS SECURITY INSTRUMENT, made the 12th day of  FEBRUARY    , in the year
TWO THOUSAND FIVE                                                      ,( 2005 ), between:
JENNIFER L YOUNG, AND MICHAEL S YOUNG, WIFE AND HUSBAND


108 TIMBERLAND DR, CANTON, GA 30114-5775
                              (Address Required)
as party or parties of the first part, hereinafter, called Grantor, and: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., ("MERS") a Delaware corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **MERS
is the "Grantee" under this Security Instrument** and is acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns, with an address of
4500 Park Granada, Calabasas, CA 91302-1613
                              (Address Required)
    WITNESSETH, that Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), in hand paid
at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold,
aliened conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto MERS (solely as
nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, the following described
property (hereinafter the "Property"), inclusive of all buildings and other improvements now, or in the future, a part of the
Property and all rights and interests which derive from the Grantor's ownership, use or possessions of the Property and all
appurtenances thereto, to-wit:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.


● MERS HELOC - GA Deed                    Page 1 of 5                    Initials:
2D994-GA (02/04)(d)

DOC ID #: ▮▮▮▮▮

This instrument is second only to a Security Deed in favor of
recorded in Deed Book          , page          ,                    County Records, and it is
agreed that any default thereunder may be deemed to be a default under the terms of the within instrument. Grantor shall not
increase, amend or modify the indebtedness secured by the prior Security Deed without the Lender's written consent and shall
upon receipt of any notice from the holder of the prior Security Deed promptly deliver a copy of such notice to the Lender.
Grantor shall pay and perform all of Grantor's obligations under the prior Security Deed. Lender shall have the right but not the
obligation to make advances to the holder of any prior Security Deed noted above or otherwise in order to cure any default
thereunder, and any advances so made shall be secured by the Agreement and this Security Deed and shall be repayable upon
demand by Lender with interest at the same rate as provided under the Agreement secured hereby, The Grantor herein hereby
assigns and authorizes payment to the Lender herein and its successors in title of any surplus funds arising from foreclosure of
said first security deed.

GRANTOR UNDERSTANDS and agrees that Grantee, MERS, is a separate corporation acting solely as nominee for Lender
and Lender's successors and assigns, and holds only legal title to the interests granted by Grantor in this Security Instrument, but,
if necessary to comply with law or custom, Grantee (as nominee for Lender and Lender's successors and assigns) has the right: to
exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any
action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

TO HAVE AND TO HOLD the said bargained Premises with all and singular the rights, member and appurtenances thereto
appertaining, to the only proper use, benefit and behoof of MERS, (solely as nominee for Lender and Lender's successors and
assigns) and to the successors and assigns of MERS, in fee simple; and Grantor, will warrant and forever defend the right and title
to the above-described property unto the Lender, its successors and assigns, against the claims of all persons whomsoever, except
as may be otherwise expressly stated herein.

This conveyance is made under the existing code of the State of Georgia, and upon payment of the indebtedness due under
the Agreement hereby secured and a written agreement to terminate said Agreement as provided under Georgia Law, this
Security Deed shall be cancelled and surrendered pursuant thereto, the debt hereby secured being that certain Home Equity
Credit Line Agreement and Disclosure Statement ("Agreement") of even date with this deed between Grantor, MERS, and
Lender herein having a maximum allowed indebtedness amount of
TWENTY FIVE THOUSAND NINE HUNDRED and 00/100
Dollars ($ 25,900.00        ) (the "Credit Limit" or so much thereof as may be advanced and readvanced from time to
time to Grantor, plus interest and costs, late charges and all other charges related to the Agreement, all repayable with interest in
installments as provided in said Agreement with a final maturity due date of    FEBRUARY 15, 2030    (being the last day of
the "Repayment Period" as defined under the Agreement). This Security Instrument not only secures the foregoing described
Agreement but also the performance of all of the promises and agreements made under the Agreement and this Security
Instrument as well as any extensions, renewals of the whole or any part thereof, amendments, supplements and other
modifications of the Agreement and/or this Security Instrument and the indebtedness due thereunder and any and all other
indebtedness now due by Grantor to Lender or hereafter incurred by Grantor, including, but not limited to all future advances
made by Lender to Grantor under the Agreement or made by Lender on behalf of Grantor as permitted under this Security
Instrument or allowed by law such as payment of taxes, assessments, insurance premiums or costs or expenses required for the
preservation of the Property. All advances or readvances under the Agreement may be made, repaid and remade from time to time
in accordance with the terms of the Agreement and subject to the Credit Limit under the Agreement.

It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or
paid with the proceeds of the Agreement secured hereby.

As further security for repayment of the indebtedness under the Agreement, Grantor hereby sells, assigns, sets over and
transfers to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of
MERS, all of the rents which shall hereafter become due or be paid for the use of the above-described Property, reserving only the
right to Grantor to collect said rents so long as there is no default in the obligations of Grantor under this Security Instrument or in
payment of the Agreement. In the event of such default in the Agreement, principal or interest, or in the performance of any
obligation of Grantor under this Security Instrument, Lender may enter upon the Premises and collect the rents therefrom and the
Lender is hereby constituted and appointed as Grantor's agent and attorney-in-fact to collect such rents by any appropriate
proceedings, and Lender is authorized to pay a rental or real estate agent a reasonable commission for collecting such rents. The
net amount of rent so collected shall be applied towards the Agreement.

For so long as the Agreement exists and indebtedness due thereunder, or any performance remains due under the Agreement,
Grantor hereby covenants:
(i)        to pay all taxes and assessments, water charges and sewer rents or charges related to the Property  that may become
liens upon said Property, as they become due;
(ii)       to keep the improvements on the Property insured by a company or companies acceptable to Lender against loss or
damage by fire or lighting in the sum of at least an amount adequate to protect Lender's interest in Lender's sole discretion with
loss, if any, payable to said Lender, and shall deliver the policies of insurance to the Lender naming  Lender as the mortgagee or
loss payee thereunder together with the agreement of the insurance company involved to notify Lender in writing at least ten (10)
days prior to any intended cancellation or reduction in coverage, for any reason;

DOC ID #: ▮▮▮▮▮

(iii) GRANTOR SHALL PROMPTLY DELIVER TO LENDER, UPON REQUEST BY LENDER, RECEIPT SHOWING PAYMENT IN FULL OF ALL OF THE FOREGOING ITEMS.

(iv) to keep the Property in as good condition as it is now and to permit Lender or its agents or designee the right to inspect the Property at any reasonable time;

(v) shall not commit or suffer any actual or threaten waste to the Property;

(vi) shall comply with, or cause the Property to be complied with, all statutes, ordinances, rules, regulations, and directives or any governmental authority relating to the Property or any part thereof or the use of occupancy of the Property or any part thereof;

(vii) shall not remove, demolish, or materially alter, without the prior written consent of Lender, any part of the Property, including, but not limited to, any of the improvements, (the costs for such improvements or repair being the sole obligations and responsibility of Grantor, who shall pay the entire expenses thereof promptly when due).

(viii) shall not create or permit to exist any liens or encumbrances on the Property which are , junior and inferior in terms of priority to the lien created by this Security Instrument;

(ix) shall not grant, bargain, convey, transfer, assign, exchange or sell all or any portion of Grantor's interest in the Property prior to the satisfaction, cancellation and release by Lender of this Security Instrument and the Agreement; and,

(x) if the Property is a condominium or a planned unit development or other similar property or Property having restrictive covenants thereon, to perform all of the obligations imposed under the Grantor and/or against the Property pursuant to the declaration or covenants creating or governing the condominium or planned unit development or restricted Property, the by-laws and regulations of the condominium or planned unit development or restricted Property and constituent or related documents.

Any tax, assessment, premium of insurance, prior security lien payments (if applicable), and/or any costs or expense necessary for the preservation of the Property, not paid when due by Grantor or required, may be paid by Lender repayable to Lender on demand and shall draw interest from the time of said payment at the interest rate per annum as provided in the Agreement, and shall, with such interest, be covered by this Security Instrument. Any payments by Lender on behalf of Lender will not cure Grantor's default or failure to perform Grantor's promises or covenants under this Security Instrument. Any replacement insurance that Lender obtains to cover loss or damages to the Property may be limited to the amount owing under the Agreement plus the amount of any prior liens or prior security deed(s), if any. Lender may file a proof of loss on behalf of Grantor if Grantor fails or refuses to do so and Lender may also sign Grantor's name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Property or any part thereof. If Lender receives payment of a claim, Lender will have the right to choose to use the money either to repair the Property or to reduce the amount owing on the Agreement.

Failure to perform the foregoing covenants shall be an event of default under the terms of this Security Instrument and the Agreement. Should Lender receive any money for condemnation or for damages covered by insurance, such money shall be applied to the repair or replacement of any improvements upon the Property without affecting the full lien of this Security Instrument unless the damage for which such insurance proceeds are paid and/or received are substantial in nature in which event (and in any event in which damages are received by Lender for a condemnation) such money may be retained and applied toward the payment of any amount hereby secured or may be paid over, either wholly or in part, to Lender to enable Grantor to repair or replace improvements, or for any other purpose, without affecting the lien of this Security Instrument for the full amount secured hereby before such damage or such payment took place in Lender's sole discretion. In regard to the foregoing, Grantor assigns to Lender all proceeds or any award or claim for damages, direct or consequential with condemnation or other taking of the Property or any part of it, or for conveyance in lieu of condemnation, all of which shall be paid to Lender, subject to the terms of any prior Security Deed.

Grantor agrees to sign or cooperate in the signing and/or filing of any public record or otherwise of any document and, at Grantor's expense, to do whatever Lender believes is necessary to perfect and continue the perfection of Lender's lien and security interest in the Property.

To the extent permitted by applicable law, Grantor waives and releases any error or defects in proceedings to enforce this Security Instrument and hereby waivers the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

Time being of the essence of this contract, Lender shall have the right to terminate the Agreement and/or accelerate the maturity of the indebtedness under the Agreement by declaring the entire indebtedness due under the Agreement to be in default and immediately due and payable, upon the failure of Grantor to make any payment when due, pursuant to the Agreement, or upon any event of default or upon failure of Grantor to perform any obligation or make any payment required of Grantor by the terms of this Security Instrument or the Agreement. Notwithstanding the foregoing, Lender may delay or temporarily waive any rights under the Agreement or this Security Instrument without losing them. Any such delay or waiver will not be a permanent waiver of that right or any other provision of the Agreement or of this Security Instrument unless specifically so waived in writing signed by Lender. Grantor may also release any person or property obligated under the Agreement or this Security Instrument without causing the Lender to lose any of its rights hereunder or in the Property.

DOC ID #

And Grantor further covenants and agrees that the possession of the Property, during the existence of the Agreement, by Grantor, or any persons claiming under Grantor, shall be that of tenant under the Lender, or assigns, during the due performance of all of the obligations aforesaid, and that in case of a sale under the power as hereinafter provided or by foreclosure by process of law, Grantor, or any person in possession under Grantor, shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over.

Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in the violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, or radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

In the event of default under the Agreement, either in due course or by acceleration as herein provided, or in the event of default in the performance of any of the obligations required of Grantor by the terms of this Security Instrument, Lender shall be entitled to have a receiver appointed for the Property, in connection with or as part of any proceeding to foreclose this Security Instrument or to enforce any of its terms of the collection of all or any part of the Agreement and Grantor agrees to the appointment of such receiver without proof of insolvency or other equitable grounds and hereby appoints Lender as attorney-in-fact with authority to consent for Grantor to the appointment of such receiver.

In case the indebtedness due under the Agreement shall not be paid when it becomes due by its terms in due course or on maturity or demand, or by reason of a default in the Agreement or as herein provided, Grantor hereby grants to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, and assigns, the following irrevocable power of attorney: To sell the Property at auction, either in whole or in part or in separate parcels at different times, if necessary, until the indebtedness due under the Agreement described herein is satisfied or the Property exhausted, whichever first occurs, at the usual place for conducting sales at the Courthouse in the County where the land or any part thereof lies, in said State, to the highest bidder for cash, after advertising time, terms and place of such sale once a week for four weeks immediately preceding such sale (but without regard to the number of days) in a newspaper published in the county where the land or any part thereof lies, or in the paper in which the Sheriff's advertisements for such County are published, all other notice being hereby waived by the Grantor, and the Lender or any person on behalf of the Lender, or assigns, may bid and purchase at such sale and thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of the Property in fee simple, which conveyance shall contain recitals as to the happenings of the default upon which the execution of the power of sale herein granted depends, and Grantor hereby constitutes and appoints Lender and assigns the agent and attorney-in-fact of Grantor to make such recitals, and hereby covenants and agrees that the recitals so to be made by Lender, or assigns, shall be binding and conclusive upon Grantor and the heirs, executors, administrators and assigns of Grantor, and that the conveyance to be made by MERS or Lender, shall be effectual to bar all equity of redemption of Grantor, or the successors in interest of Grantor, in and to the Property, and or assigns shall collect the proceeds of such sale, and after reserving therefrom the entire amount of principal and interest due, (including interest due before or after the default as set forth in the Agreement which interest rate(s) shall continue before and after default, judgment and/or foreclosure until the debt is paid full) together with the amount of any taxes, assessments and premiums of insurance or other payments theretofore paid by MERS or Lender, with interest at the rate per annum as provided in the Agreement from date of payment, together with all costs and expenses of sale and either fifteen per centum (15%) of the aggregate amount due for attorney's fees or reasonable attorney's fees, as provided in the Agreement, shall pay any over-plus to the Grantor, or to the heirs or assigns of the Grantor as provided by law.

Notwithstanding any other provision of this Security Instrument, and in addition to any other remedy or remedies provided in this Security Instrument or by law, upon the occurrence of an event of default, MERS or Lender may do any one or more of the following:

(i)  Enter upon and take possession of the Property without the appointment of a receiver, or an application therefor, to manage the Property (to include the signing, cancellation and changes of existing leases), and/or to collect and receive the rents (including past due rents), incomes, issues and profits of and from the Property, and Lender is hereby constituted and appointed as the attorney in fact of Grantor to manage and operate the Property and to collect such sums. After deducting from the sums so collected all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for any of such purposes), the net amount so collected shall be applied toward the debt secured hereby; provided that nothing herein contained shall be construed to obligate Lender to discharge or perform the duties of a landlord to any tenant or to impose any liability upon Lender as the result of any exercise by Lender of its rights under this Security Instrument, and Lender shall be liable to account only for the rents, incomes and profits actually received by Lender;

(ii)  Apply for the appointment of a receiver of the rents, incomes, issues and profits of or from the Property, or of the Property, or both, without notice to Grantor. Lender shall be entitled to the appointment of such receiver as a matter of right, without regard to the value of the Property as security for the debt secured hereby or the solvency of Grantor or any person or legal entity liable for the payment of all or any part of such debt; and/or

(iii)  Declare the entire debt secured hereby immediately due and payable, without notice to or demand upon Grantor other than as may be required under the Agreement.

MERS HELOC - GA Deed
2D994-GA (02/04)

Initials: _MSY_ _____

DOC ID # ▮▮▮▮▮▮

Except for any notice required under applicable law to be given in another manner, (a) any notice to Grantor or to Grantor provided for in this Security Instrument shall be given by delivering it or by mailing such notice by regular first class mail addressed to Grantor at the last address appearing in MERS or Lender's records or at such other address as Grantor may designate by notice to MERS or Lender as provided herein, and (b) any notice to MERS or Lender shall be given by certified mail, return receipt requested, to For MERS:

P.O Box 2026, Flint, MI 48501-2026

For Lender:

4500 Park Granada, Calabasas, CA 91302-1613

or to such other address as MERS or Lender may designate by notice to Grantor. Any notice provided for in this Security Instrument shall be deemed to have been given to Grantor or MERS or Lender when given in the manner designated herein.

GRANTOR HEREBY WAIVES ANY RIGHT GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE STATE OF GEORGIA OR THE CONSTITUTION OF THE UNITED STATES OF AMERICA TO A NOTICE OR TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED TO MERS OR LENDER HEREUNDER BY THIS SECURITY INSTRUMENT, AND GRANTOR WAIVES GRANTOR'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE UNDER POWER DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS SECURITY INSTRUMENT ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT PRIOR NOTICE OR JUDICIAL HEARING. ALL WAIVERS BY GRANTOR IN THIS PARAGRAPH HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY BY GRANTOR, AFTER GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO BE INFORMED BY COUNSEL OF GRANTOR'S CHOICE AS TO THE MEANING AND EFFECT HEREOF.

The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise and are granted as cumulative to the remedies for collection of said indebtedness provided by law.

This Security Instrument and the Agreement secured shall be deemed and construed to be contracts executed and to be performed in Georgia.

IN WITNESS WHEREOF, Grantor has hereto set his/her/their hand and seal the day and year first above written.

_____ (L.S.)
JENNIFER L. YOUNG

_____ (L.S.)
MICHAEL S. YOUNG

_____ (L.S.)

_____ (L.S.)

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public



Prepared by: ELLEN FERRER

GEORGIA
GRANTOR: JENNIFER L. YOUNG et al
LENDER: COUNTRYWIDE HOME LOANS, INC.
DATE OF SECURITY DEED: 02/12/2005

DOC ID

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:



_____ (Seal)
JENNIFER L. YOUNG    -Grantor

_____ (Seal)
-Grantor

Notary Public

_____ (Seal)
-Grantor

_____ (Seal)
-Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me                                         on the date set forth above.

_____
Notary Public

_____
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure."

_____
Borrower JENNIFER L. YOUNG

_____
Borrower MICHAEL S. YOUNG

_____
Borrower

_____
Borrower

VMP-960(GA) (0307)    CHL (08/03)(d)    VMP Mortgage Solutions (800)521-7291    1/94

## EXHIBIT "A"

### LEGAL DESCRIPTION

A PARCEL OF LAND SITUATED IN THE STATE OF GEORGIA, COUNTY OF
CHEROKEE, WITH A STREET LOCATION ADDRESS OF 108 TIMBERLAND DR;
CANTON, GA 30114-5775 CURRENTLY OWNED BY JENNIFER L YOUNG AND
MICHAEL S YOUNG HAVING A TAX IDENTIFICATION NUMBER OF
14N09B-00000-003-000 AND BEING THE SAME PROPERTY MORE FULLY
DESCRIBED IN BOOK/PAGE OR DOCUMENT NUMBER 6657-215 DATED
10/17/2003 AND FURTHER DESCRIBED AS LOT 3, CAMDEN WOODS .620AC.

108 TIMBERLAND DR; CANTON, GA 30114-5775

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR COUNTRYWIDE
HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS

When recorded mail to:
BANK OF AMERICA, N.A.
4500 AMON CARTER BLVD.
TX2-979-01-19
FORTH WORTH, TX 76155
Attn: DOC PROCESSING FORTH
WORTH

## CORPORATION ASSIGNMENT OF SECURITY DEED
Doc. ID# ▮▮▮▮▮
Commitment ▮▮▮▮▮

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, P.O BOX
2026, FLINT, MI 48501-2026, hereby assigns and transfers to 2005 Residential
Trust 3-2 425 Divisadero St Ste #207, San Francisco CA 94117 all its rights,
title and interest in and to a certain Mortgage dated 2/12/05, executed by:
JENNIFER L YOUNG and MICHAEL S YOUNG, WIFE AND HUSBAND, Mortgagor as per
MORTGAGE recorded as Instrument No. N/A on 3/01/05 in Book 7735 Page 206 of
official records in the County Recorder's Office of CHEROKEE County, GEORGIA.
    Tax Parcel = 14N09B-00000-003-000
Original Mortgage $25,900.00
108 TIMBERLAND DR, CANTON, GA 30114

Dated: 07/03/2017        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                         NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
                         SUCCESSORS AND ASSIGNS

By _____
   JESSICA FIGUEROA, ASSISTANT VICE PRESIDENT .

By _____
   MARTHA CORREA, Assistant Vice President

WITNESS: _____
                    **Ly Doyscher**

State of Florida
County of Hillsborough

Subscribed and sworn to (or affirmed) before me this 3 day of Jul, 2017, by
JESSICA FIGUEROA as ASSISTANT VICE PRESIDENT for MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS and MARTHA CORREA as Assistant Vice President of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE
HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, proven to me on the basis of
satisfactory evidence to be the person(s) who appeared before me.

Julio C. Estrada
NOTARY PUBLIC          (Signature of Notary Public-State of Florida)
STATE OF FLORIDA              Julio C. Estrada
Comm# FF208945
Expires 3/11/2019 , Notary Public

Personally Known ✓ OR
Produced Identification ___ Type of Identification Produced: ___

Prepared by: LY DOYSCHER
4909 SAVARESE CIR
TAMPA, FL 33634
Phone#. 786▮▮ 432-1000
MIN: ▮▮▮▮▮▮
MERS Phone: 1-888-679-6377